IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDY PETERSON, #268515, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  1:10-CV-102-WKW |
| | ) | [WO] |
| ANDY HUGHES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Randy Peterson ["Peterson"], a former inmate of the Houston County Jail, in Dotham, Alabama, who is now housed at the Riverbend Correctional Facility in Milledgeville, Georgia, challenges his treatment at the Houston County Jail when he fell after being required to walk down a flight of stairs while wearing a security leg brace. *Complaint - Doc. No. 1* at 3-6.  The defendants are identified as Andy Hughes ["Hughes"], the Sheriff of Houston County, Mark Culver ["Culver"], a member of the Houston County Commission, and the Houston County Board of Commissioners. *Id.* at 1.  Peterson seeks damages and injunctive relief. *Id.* at 4, 7.

The defendants filed a special report and supporting evidentiary materials addressing Peterson's claims for relief. *Defs.' Resp. - Doc. No. 21.*  In these documents, the defendants deny Peterson's allegations that they violated his federal constitutional or state rights.  They

also argue that they are entitled to immunity and assert that his claims for injunctive and declaratory relief are moot.  Additionally, the defendants maintain that the complaint is due to be dismissed because Peterson failed to properly exhaust an administrative remedy available to him at the Houston County Jail with respect to the claims presented in this cause of action.[1]  *See* 42 U.S.C. § 1997e(a) (requiring exhaustion of available administrative remedies before filing suit).

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  *Order of May 25, 2010 - Doc. No. 22.*  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion and the evidentiary materials filed

---

[1] Plaintiff insists that administrative remedies were not available to him because he was handed the response to his grievance appeal "as he was being processed out of the Houston County Jail to be transferred to the Kilby Correctional Facility." *Pl.'s Resp. - Doc. 28* at 2.  Defendants have not stated whether the administrative process remained available to Peterson after he transferred from the Houston County Jail.  Some courts have held that transfer to a different correctional facility does not alter a prisoner's responsibility to attempt to exhaust administrative remedies before filing suit.  *See, e.g., Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) ("when a reasonable policy is in place, but is silent or vague in a particular circumstance, courts must look to see whether the prisoner has attempted to satisfy the requirements of the policy"); *see also Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) ("Nothing in the regulations explicitly prevents [the prisoner] from filing an administrative complaint while temporarily housed at another facility.").  Others have held that remedies may become unavailable upon transfer, or that the burden is on defendants to show remedies remained available after transfer.  *E.g., Rodriguez v. Westchester Cnty. Jail Corr. Dep't*, 372 F.3d 485, 488 (2nd Cir. 2004) (prisoner reasonably believed "transfer rendered administrative remedies no longer 'available,'" ); *Bradley v. Washington*, 441 F. Supp. 2d 97, 103 (D.D.C. 2006) (prisoner's transfer from state to federal custody rendered grievance procedures unavailable).  The Court of Appeals for the Eleventh Circuit has not addressed whether transfer from a county jail to a state prison during the pendency of the grievance process renders administrative remedies unavailable.  Even assuming, however, that Peterson had no administrative remedies available to him when he was transferred from the Houston County Jail, defendants are due to be granted summary judgment for the reasons stated in this Recommendation.

2

in support thereof, the court concludes that the motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Peterson is required to produce "sufficient [favorable] evidence" which would be admissible at trial

supporting his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . .").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest*

*Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court, which is admissible on its face or which can be reduced to admissible form, indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.

*Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Peterson fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION

### A. Injunctive/Declaratory Relief

Plaintiff is no longer incarcerated at the Houston County Jail, consequently his request for equitable relief is moot. *See Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "Equitable relief is a prospective remedy, intended to prevent future injuries." *Id.* For that reason, "[w]hen the threat of future harm dissipates, the plaintiff's claims for

equitable relief become moot because the plaintiff no longer needs protection from future injury." *Id.*; *see also Spears v. Thigpen,* 846 F.2d 1327, 1328 (11th Cir. 1989) (per curiam) ("[A]n inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred.") (quotation marks and citation omitted).  There is no indication that Peterson, who is now at a facility in Georgia, will be returned to the Houston County Jail, much less be returned in the immediate future.  "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Cotterall v. Paul,* 755 F.2d 777, 780 (11th Cir. 1985) (quotation marks and citations omitted).  Absent in this case is any showing of a "continuing, present injury or real and immediate threat of repeated injury" to Peterson.  *See id.* (finding that a transfer of the plaintiff back to the jail if he was again incarcerated at a minimum security facility and charged with a disciplinary infraction was too speculative to satisfy the required injury element).  Mootness is jurisdictional, and dismissal of the equitable claims is required when an action is moot, as a decision in a moot action would be an impermissible advisory opinion.  *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) *(*per curiam*).*  Consequently, plaintiff's equitable claims are due to be dismissed.

## B. Commissioner Mark Culver and the Houston County Board of Commissioners

Plaintiff names Houston County Commissioner Mark Culver as a defendant, alleging

that he is the final policymaker of the Houston County Board of Commissioners and is responsible for the direction, control and maintenance of the jail and the county courthouse. Plaintiff also names the Houston County Board of Commissioners as a defendant.  Plaintiff alleges that these defendants should have required the jailers and staff to use the courthouse elevators when transporting inmates fitted with the leg brace.  Culver avers, "Neither Houston County nor its commissioners perform, nor do they have any duties with respect to, the daily operations of the Houston County Jail and they have no authority to dictate how the jail is run or to dictate how inmates are transported to and from court."  *Culver Aff.* at 3, *Defs.' Resp. - Doc. 21-2* at 3.

"A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.' *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) (*citing Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658 (1978))." *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1287 (11th Cir. 1998).  Consequently, "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control."  *Id.* at 1292.  In deciding whether a county commission is liable under § 1983, "[a] court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'"  *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784-85 (1997) (*quoting Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).  State law

9

is well settled "that an Alabama sheriff [and his jailers] act[] exclusively for the state rather than for the county in operating a county jail." *Turquitt*, 137 F.3d at 1288. Specifically, under all facets of Alabama law, a county sheriff and, by extension, officers employed by the sheriff in the management of a county jail, "act as state officers when supervising inmates and otherwise operating the county jails." *Id.* at 1289; *Parker v. Amerson*, 519 So.2d 442, 443 (Ala. 1987) ("A sheriff [or county jailer] is an executive officer of the State of Alabama" and as such "is not an employee of a county for the purposes of imposing liability on the county."); *Ala. Code* § 14-6-1 (A sheriff has "the legal custody and charge of the jail in his county and all prisoners committed thereto."); *King v. Colbert County*, 620 So.2d 623, 625 (Ala. 1993) (*Ala. Code* § 14-6-1 establishes that "[t]he sheriff's authority over the jail is totally independent of the [county commission].).

As is clear from the foregoing, Alabama sheriffs do not act on behalf of the county while managing inmates in the county jails. *Turquitt*, 137 F.3d at 1292. For section 1983 liability to attach to a county or its commissioners, the action at issue must have been committed by a person who acts under authority of the county. *McMillian*, 520 U.S. at 784-85. Alabama law, however, clearly directs that sheriffs possess only state authority during the daily operation of a county jail. *Vinson v. Clarke Cnty.*, 10 F. Supp. 2d 1282, 1295-96 (S.D. Ala. 1998). Plaintiff is not faulting the Commission for matters over which it has control. Instead, he challenges the handling of inmates, which is the sheriff's responsibility. Moreover, a county commission and its individual members are entitled to absolute immunity

10

under section 1983 for any claims which challenge the appropriation of funds for the maintenance, operation or supervision of a county jail. *Woods v. Gamel*, 132 F.3d 1417, 1420 (11th Cir. 1998). Thus, defendant Culver and the Houston County Board of Commissioners are due to be granted summary judgment.

### C.  Sheriff Andy Hughes

The remaining defendant is Sheriff Andy Hughes. Peterson alleges that Hughes created a dangerous situation which led to his injuries. Specifically, Peterson alleges that Hughes is the final policymaker for the jail, and Hughes and his staff forced Peterson to wear a leg brace during his transport from the jail to the courthouse, causing him injuries.

### 1.  Suit Against Defendant in His Official Capacity - Absolute Immunity

To the extent Peterson sues Hughes in his official capacity, he is immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). Under all facets of Alabama law, a county sheriff and his staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt*, 137 F.3d at 1289; *see* Ala. Const. Art. V, § 112 (designates county sheriff as member of State's executive department); *see also Parker*, 519 So.2d at 443 (county sheriff is executive officer of the State). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*,

11

517 U.S. 44, 59 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997). In light of the foregoing, it is clear the defendant is a state official entitled to absolute immunity from the plaintiff's claims for monetary damages asserted against him in his official capacity.

## 2. Individual Capacity - Safety Claim

An official may be held liable under the United States Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not 'respond[] reasonably to the risk'. . . ." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*) (quoting *Farmer*, 511 U.S. at 844). A plaintiff must also show that the constitutional violation caused his injuries." *Id.* at 1028.

12

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-29 (citation to *Farmer* omitted).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***."  *Farmer*, 511 U.S. at 837-38 (emphasis added); *see also Goodman v. Kimbrough*, No. 12-10732, 2013 WL 3109280, at *5 (11th Cir. June 21, 2013) (although court was "disturbed by the dereliction of duty that facilitated the violence visited upon [the inmate] while he was under the officers' charge," the officers were entitled to summary judgment because the record did not demonstrate they "were subjectively aware of a substantial risk of serious harm to [the inmate]"); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due

13

care for the prisoner's interests or safety. . . . It is ***obduracy and wantonness, not***

***inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and

Unusual Punishments Clause, whether that conduct occurs in connection with establishing

conditions of confinement, supplying medical needs, or restoring official control over a

tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must

be a strong likelihood, rather than a mere possibility before a [correctional official's] failure

to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th

Cir. 1990) (per curiam) (citations and internal quotations omitted). As the foregoing makes

clear, mere negligence "does not justify liability under section 1983. . . ." *Id.*

Pursuant to the aforementioned criteria, Peterson is "required to produce sufficient

evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference

to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate

indifference claim. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*,

511 U.S. at 837-38 (To circumvent entry of summary judgment on a properly supported

14

motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-30 (same).

Peterson avers that on October 6, 2009, he was wearing handcuffs which were locked at his waist to a belly chain, he was wearing leg chains, and he was wearing the leg brace that prevented him from bending his leg. *Pl.'s Aff. - Doc. 28-1* at 1.  He fell while going down a stairwell in the Houston County Courthouse.  *Id.*  Because his movement was restricted, he was unable to catch himself, and he landed on his back and one of his elbows.  *Id.*  After Peterson was injured, he received medical care.  *Smoak Aff.* at 3-5, *Defs.' Resp. - Doc. 21-7* at 3-5.  An emergency room doctor diagnosed him with muscle strain, and he was treated on eight additional occasions between the time of his injury on October 6, 2009, and November 16, 2009.  *Id.* at 3-5; *see also Defs.' Resp. - Doc. 21-8* (plaintiff's inmate records).

Defendant Hughes avers that he was not personally or directly involved in the factual events that led to Peterson's complaint.  *Hughes Aff.* at 1, *Defs.' Resp. - Doc. 21-1* at 1. Houston County Jail Policy provides that most inmates must be handcuffed and shackled during transport out of the secure area of the jail.  *Id.* at 2.  Jail policy also provides that "'all inmates who are transported outside of the confines of the jail will be transported in a manner which will help ensure the safety and security of the inmate, the transporting officer/agent,

15

and the general public.'"  *Id.* (quoting Houston County Jail Policy and Procedure Directive

Number C-402).  Hughes avers:

> In addition to other prior attempts to escape and/or escapes, in 2007 one inmate who was charged with one or more felonies and was considered a "high risk" inmate attacked and pushed a deputy sheriff, who was assigned to courthouse security, down the stairs and escaped from the courthouse and was not apprehended until sometime later.  The escaped inmate was considered to be an immediate danger to the community and this resulted in several establishments, such as First Baptist Church Dothan, having to go into lockdown and caused their premises to be searched for the inmate as he escaped and hid from both city and county officers who were trying to re-apprehend him and return him to jail.
>
> After that escape attempt and after consultation with the state judges as well as court room security deputies, on September 26, 2007, Chief Deputy Donald Valenza, on behalf of the Sheriff issued a memo to all certified deputies and corrections officers related to "Inmate Court Appearances" ("the Memo").

*Id.* at 3.  The Memo provides as follows:

> Effective immediately, any inmate that is being transported to court for the following charges will have a leg brace on before they leave the jail and will wear it at all times.
>
> Capital Murder--Murder--Armed Robbery--Assault 1st
> Multiple Charges of A & B Felonies
>
> This also applies to High Risk Inmates and State Inmates

*Ex. I*, *Defs.' Resp. 21-4* at 24.  Peterson was charged with first degree robbery at the time of

his fall.  *Ex. L, Defs.' Resp. 21-6* at 5.

Keith W. Reed, who is the Commander of Jail Operations for the Houston County

Sheriff and not a defendant in this case, has provided an affidavit indicating that he also was

16

not personally involved in the events related to Peterson's complaints, but he is familiar with the leg brace that Peterson wore, which is made by the company Humane Restraint. *Reed Aff.* at 1, 8, 11, *Defs.' Resp. 21-3* at 1, 8, 11; *see also Ex. K, Defs.' Resp. 21-5* (describing the leg brace). Reed avers that the jail has "numerous leg braces that we use regularly," to transport inmates, and "one of the advantages of the leg brace is that it can be worn under civilian clothing such that the inmate remains secure without visible restraint that might otherwise prejudice a jury or others involved in the criminal judicial process." *Reed Aff.* at 9. Reed explains:

> According to the manufacturer[']s description, the Humane Restraint Transport Leg Brace impedes the running of and/or kicking by an inmate. It can be worn under clothing making it ideal for jury trials and airline travel where a discreet restraint is needed. While walking, the restraint, by design is locked in a straight leg position forcing the inmate to walk with one leg straight. When sitting is necessary, there is a ring at the knee joint that when pulled back, releases the brace so that it bends at its hinge permitting the inmate to sit with his leg bent. All the essential features of the leg restraint used are set forth in **Exhibit "K".**
>
> Inmate Peterson also asserts that he and other inmates should be allowed to use one of the two elevators at the courthouse instead of using the stairs. Due to the number of inmates taken to court at one time and due to the design of the Houston County Courthouse, there is no reasonable way for inmates to use the elevator without either impairing the ability of civilian and jury traffic to move from floor to floor in the courthouse or causing jurors and visibly handcuffed and shackled inmates to be in the same elevator together. Put more simply, it is my judgment that there is no reasonably safe, appropriate or secure way for inmates to be moved from floor to floor in the courthouse to court except by use of the stair wells. Furthermore, the Humane Restraint Transport Leg Restraints have been used hundreds and maybe even thousands of times and this is the first incident of falling while in the leg restraint that I am aware of.

17

With regard to the plaintiff's claims that the restraints he was forced to wear were unnecessary, this claim is false. In the past when it was procedure to take inmates out of the jail to court appearances, medical appointments, dental appointments, so forth, the only thing inmates were restrained with were hand cuffs, belly chains, and leg chains. However, after the inmate escaped from officers in 2007 while wearing leg chains, it became apparent that for high ri[s]k inmates more effective restraints were indeed necessary. That is when the jail began the use of the Humane Restraint Transport Leg Brace as an additional form of restraint.

*Id.* at 9-10.

Peterson alleged that he complained to the deputies, but they told him the sheriff was not going to change the policy. *Complaint - Doc. 1* at 5. Peterson, however, does not state that he complained to Hughes. Plaintiff Peterson fails to present evidence sufficient to create a genuine issue of disputed fact with respect to his claim that defendant Sheriff Hughes acted with deliberate indifference. The record is devoid of evidence that Hughes had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Peterson. Based on the record, Hughes was not personally involved in Peterson's transport, and he did not hear the alleged complaints Peterson made about the leg brace before his injury. Additionally, the record demonstrates that until Peterson was injured, the Commander of Jail Operations had not heard of a single injury connected with the leg brace, despite hundreds and perhaps thousands of uses. Peterson fails to present any evidence, significantly probative or otherwise, demonstrating that defendant Hughes knew the leg brace posed a serious risk of harm that inmates could fall while wearing it and walking down stairs, or that Peterson could fall while wearing it and walking down the stairs, and that with this

18

knowledge thereafter ignored the risk.  Moreover, the undisputed medical records establish Peterson had unlimited access to medical treatment for any injury or malady endured while in the jail.  Peterson has therefore failed to establish each of the requisite elements of his deliberate indifference claim against Hughes.  *Carter*, 352 F.3d at 1350.  Consequently, defendant Hughes is entitled to summary judgment on Peterson's claim that use of the leg brace violated his right to be free from deliberate indifference to his safety.

### D.  Remaining Claims

Peterson complains that the defendants violated his rights by acting with negligence which resulted in his injuries.  *Complaint - Doc. 1* at 3, 7.  The law is well settled that the Constitution is not implicated by negligent acts of officials.  *Daniels v. Williams*, 474 U.S. 327, 334 (1986); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (mere negligence does not violate the Eighth Amendment); *Kelley v. Hicks*, 400 F.3d 1282, 1285 (11th Cir. 2005) (negligence insufficient to establish a constitutional violation).

Peterson further alleges that he suffered emotional distress when he was forced to wear the leg brace on an occasion after he fell while wearing a leg brace.  *Complaint* at 3, 6. Damages for intentional infliction of emotional distress may be recoverable in a state tort law claim but not so in an action brought under section 1983.[3]  Thus, Plaintiff's fear that the

---

[3] Section 1997e(e) states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

defendant's actions created an unsafe living environment for inmates in his custody is insufficient to state a claim on which relief may be granted in a section 1983 action. *Cf. Conner v. Sticher*, 801 F.2d 1266, 1268 (11th Cir. 1986) (plaintiff's subjective belief harm may occur fails to implicate a constitutionally protected interest).      Finally, to the extent Peterson bases his complaint on alleged violations of state law, he is entitled to no relief from this court.   The court's exercise of supplemental jurisdiction over a state law claim is completely discretionary.   Under 28 U.S.C. § 1367(c)(3), the court "may decline to exercise supplemental jurisdiction over a [state law claim] if . . . the district court has dismissed [the related federal] claim[] over which it has original jurisdiction. . . ."   The court's discretion is advised by *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), in which the Court held that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.[]   Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.[]

*Id.* at 726 (footnotes omitted).   In *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), the Supreme Court reiterated that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,[] the federal court should decline the exercise of jurisdiction by dismissing the [claim] without prejudice. . . ."   *Id.* (footnote omitted).   Accordingly, the court concludes that Peterson's claims alleging violations of state law should be dismissed without prejudice.

20

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED;

2.  Judgment be GRANTED in favor of the defendants;

3.  The federal claims be dismissed with prejudice;

4.  The supplemental state claims be dismissed without prejudice; and

5.  Costs be taxed against the plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the Recommendation **on or before August 1, 2013**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 18th day of July, 2013.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE